**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

BENJAMIN FOSS,

*Plaintiff*,

v.

BANK OF NEW HAMPSHIRE,                              Civil Action No.
Corporate Trustee of the Mae C. Foss
Trust f/b/o W. Perkins Foss IV,

W. PERKINS FOSS IV, Trustee of the Mae
C. Foss Trust f/b/o W. Perkins Foss IV, and

MARINER WEALTH ADVISORS, LLC,

*Defendants*,

and

CHRISTOPHER MOORE FOSS,

*Interested Party*.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

**INTRODUCTION**

1.      Benjamin Foss ("Ben" or "Plaintiff") brings this action against the Bank of New Hampshire ("BNH"), Corporate Trustee of the Mae C. Foss Trust f/b/o W. Perkins Foss IV (the "Trust"), his father, Wilson Perkins Foss IV ("Perkins"), co-Trustee and beneficiary of the Trust, and Mariner Wealth Advisors, LLC (together with any predecessor entity, "Mariner"), which served as investment manager for the Trust during at least some of the period at issue.  Despite Ben and his brother, Christopher Moore Foss ("Chris"), being current beneficiaries of the Trust, for the last twenty-two years BNH and Perkins have failed to notify Ben or Chris of their beneficiary status, keep them reasonably informed of the Trust's administration, or consider their

1

interests in their administration. Instead, BNH has allowed the Trust's administration to be driven solely by Perkins' interests and vulnerabilities, resulting in Perkins receiving substantial distributions from BNH as if the Trust was his own personal bank account, while Ben and Chris received nothing. BNH and Mariner have also managed the investments of the Trust in the interest of Perkins rather than all beneficiaries. Given its expertise in wealth management and trust administration, BNH's lack of oversight is of particular concern. Considering the co-Trustees' several breaches of fiduciary duty, Ben demands removal of both trustees, appointment of an alternate and competent professional Corporate Trustee, accounting of the Trust, compensatory damages, disgorgement, and attorneys' fees.

## PARTIES

2.      Plaintiff Benjamin Foss is an individual residing at 1384 York Street, San Francisco, CA 94110, domiciled in California, and a beneficiary of the Trust.

3.      Defendant Bank of New Hampshire is the Corporate Trustee of the Trust and a domestic New Hampshire bank with a principal office address of 62 Pleasant Street, Laconia, NH 03246.

4.      Defendant Wilson Perkins Foss IV is an individual residing at 137 W Pine Street, Boalsburg, PA 16827, and is a beneficiary and co-Trustee of the Trust.

5.      Defendant Mariner Wealth Advisors, LLC is a Kansas limited liability company with a principal office address of 5700 W. 112th Street, Suite 500, Overland Park, KS 66211, and three New Hampshire locations, including 15 North Main Street, Suite 300, Concord, NH 03301.

6.      Interested Party Christopher Moore Foss is an individual residing at 13914 15th Pl SW, Burien, WA 98166, and is a beneficiary of the Trust.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, based on diversity of citizenship and an amount in controversy that exceeds $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over BNH because it is a domestic bank doing business in the State of New Hampshire and pursuant to New Hampshire Revised Statutes Annotated ("RSA") 564-B:2-202(a) because BNH serves as Corporate Trustee of the Trust and New Hampshire is the Trust's principal place of administration.

9.      This Court has personal jurisdiction over Defendant Wilson Perkins Foss IV pursuant to RSA 564-B:2-202(a) because he is the trustee of a trust having its principal place of administration in this state.

10.     This Court has personal jurisdiction over Defendant Mariner Wealth Advisors, LLC because it has a physical place of business in New Hampshire and administered the investments of a trust having its principal place of administration in New Hampshire.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), or in the alternative, (b)(3).

**FACTS COMMON TO ALL CLAIMS**

Origin of the Trust and BNH as Corporate Trustee

12.     Ben and Chris are the sons of Perkins, who is the son of the late Mae C. Foss.

13.     On April 23, 2002, Mae C. Foss executed her last will and testament (the "Will"), a true copy of which is attached hereto as Exhibit A.

14.     At the time of her death, Mae held a limited testamentary power of appointment over the principal and undistributed and accrued income of a trust created by her late husband, Wilson P. Foss, as Grantor (the "Wilson P. Foss Trust").

3

15.     Mae exercised her power of appointment to appoint the principal and income of the Wilson P. Foss Trust in further trust to her named Corporate Trustee, Fiduciary Trust Company International ("FTCI").

16.     Mae also bequeathed the property of her residuary estate equal in value to her available generation-skipping transfer tax (GST) exemption to her Corporate Trustee, FTCI.

17.     Mae's Will directs the Corporate Trustee to divide the appointed property (from the Wilson P. Foss Trust) and the bequeathed property (from her residuary estate) into equal shares for each surviving child and the issue of any predeceased children.

18.     Mae was survived by children, including Wilson P. Foss IV.

19.     The Will directs that the share for a surviving child be held in a separate (testamentary) Trust under Paragraph B of Article Fifth of the Will for the benefit of the child and the child's issue.  The Trust lasts for the lifetime of the child.  The terms of the Trust are discussed in more detail below.  Hereinafter, "Trust" refers to the Trust for the benefit of Wilson P. Foss IV and his descendants created under Paragraph B of Article Fifth of the Will.

20.     Along with appointing FTCI as the Trust's Corporate Trustee, the Trust directs each surviving child to serve as the co-Trustee of the Trust benefiting such child and their issue. *See* Will Article Tenth, Paragraph B.

21.     On information and belief, the Trust was funded in 2003 after Mae's death with FTCI serving as the Corporate Trustee and Perkins serving as co-Trustee.

22.     On information and belief, Perkins accepted his position as co-Trustee in 2003.

4

23.     On information and belief, Perkins removed FTCI as Corporate Trustee in 2003 and appointed BNH[1] as the Corporate Trustee.

24.     On information and belief, BNH accepted its position as Corporate Trustee in 2003.

25.     BNH is a regulated domestic bank offering trust administration and wealth management services.

26.     BNH has special skills and expertise as a trustee and wealth manager.

27.     On information and belief, BNH engaged Mariner and predecessor entities to manage the investments of the trust during some or all of the period from 2003 to the present.

Failure to Recognize Ben and Chris as Beneficiaries of the Trust

28.     Since its appointment as Corporate Trustee in 2003, BNH has continuously administered the Trust.

29.     On information and belief, BNH received a copy of the Will containing the terms of the Trust at, or prior to, its appointment as Corporate Trustee.

30.     On information and belief, Perkins received a copy of the Will containing the terms of the Trust at, or prior to, his appointment as co-Trustee.

31.     Pursuant to the Trust, Perkins, Ben, and Chris are beneficiaries of the Trust.

32.     The Trust directs the co-Trustees to manage the Trust, and provides the Corporate Trustee with discretion to make distributions in certain amounts to keep the beneficiaries in reasonable comfort, good health, and for their education.

33.     In particular, Paragraph B of Article Fifth states:

---

[1] At the time, BNH was called Laconia Savings Bank. Plaintiff refers to Laconia Savings Bank and its successors, including Bank of New Hampshire, as "BNH" for ease of reference.

5

My Trustees shall manage, invest and reinvest the same, shall collect the income therefrom and, after deducting from said income such expenses of administration as shall be properly chargeable thereto, shall from time to time pay or in their discretion apply such amounts out of the net income of such trust and, if such net income be deemed insufficient, out of the principal thereof to or for the benefit of such one or more of the child in respect of whom the same shall be been determined ("such child") and her or his issue living at the time of such payment or application and in such proportions among them, without regard to equality among them and with power to exclude any one or more of them, as my Corporate Trustee shall in its discretion determine to be advisable for the maintenance of such child and issue in reasonable comfort and good health and for their education, accumulating and adding to principal any net income not so paid or applied.

Exhibit A, Article Fifth, Paragraph B.

34.     Importantly, at no point does the Trust direct the Corporate Trustee to prioritize Perkins' interests over those of Ben or Chris or otherwise place the beneficiaries' interests at different levels.

35.     Despite the Trust's direction to administer the Trust for the benefit of Mae's surviving child and his issue, BNH failed to recognize Ben and Chris as beneficiaries of the Trust until November 25, 2025.

36.     On November 25, 2025, Ben met with Alison van Gelder of BNH, who admitted that Ben and Chris are beneficiaries of the Trust.

37.     On information and belief, prior to November 25, 2025, BNH did not consider Ben's and Chris' interests in its administration of the Trust.

38.     Prior to November 25, 2025, BNH did not provide Ben annual reports or other accountings regarding the Trust and/or its administration.

BNH's Distributions of Trust Assets During its Administration

39.     Throughout BNH's twenty-two-year administration of the Trust, Perkins dealt with several personal difficulties, including those related to his physical health, substance use, and mental health.

6

40.     Throughout BNH's twenty-two-year administration of the Trust, Perkins regularly visited BNH in person and developed a familiar relationship with BNH employees.

41.     BNH knew or should have known about Perkins' personal difficulties throughout its twenty-two-year administration of the Trust.

42.     Since the November 25, 2025 meeting, BNH has provided Ben with seven years of Trust account statements for 2019 through 2025.

43.     Ben is currently without Trust account statements for years 2003 through 2018.

44.     Between 2019 and 2025, BNH distributed $188,866.97 of Trust assets in a regular "Monthly Distribution" to Perkins and $210,601.87 of Trust assets in supplemental "discretionary distributions" to Perkins,[2] totaling $399,468.84 in distributions to Perkins over the seven-year period.

45.     Upon information and belief, between 2003 and 2018, BNH made distributions to Perkins in a similar manner to those made between 2019 and 2025.

46.     At no point during its twenty-two-year administration did BNH make any distributions to Ben or Chris.

Investment Management During BNH's Administration

47.     Based upon the information provided to Ben by BNH, the Trust was originally funded in 2003 with approximately $1,055,687 and its current value as of January 27, 2026 is $1,034,727.

---

[2] These two categories of distributions are treated differently on the trust's financial statements, but the trust does not distinguish between "monthly" distributions and "discretionary" distributions – there is just one category of distributions, all of which are discretionary.

48.    BNH invested Trust assets and/or employed third-party companies, including Mariner, to invest Trust assets.

49.    Upon information and belief, during its twenty-two-year administration of the Trust, BNH and/or employed third-party companies, including Mariner, invested Trust assets.

50.    On information and belief, during BNH's twenty-two-year administration of the Trust, BNH and/or third-party companies under its supervision invested substantial and disproportionate amounts of Trust assets in dividend-oriented large cap stocks, resulting in an income-focused investment portfolio.

51.    On information and belief, during BNH's twenty-two-year administration of the Trust, the value of the Trust corpus remained nominally flat, while all income was distributed to Perkins.

52.    Between 2019 and 2025, BNH paid $22,850.66 in Trust assets to itself for fees (fees for trust administration, exclusive of investment management fees), paid $56,291.77 in "asset management fees," at least a portion of which went to Mariner (investment management fees), and $4,125.00 in "tax preparation fees."

53.    Upon information and belief, between 2003 and 2018, BNH paid fees out of Trust assets in a similar manner to those made between 2019 and 2025.

54.    In total, over the seven-year period between 2019 and 2025, BNH distributed or paid in fees a total of $480,561.53 in Trust assets.

55.    On information and belief, between 2003 and 2018, BNH distributed or paid in fees a substantial amount of Trust assets in a similar manner to those made between 2019 and 2025.

56.     At no point during its twenty-two-year administration did BNH engage with Ben or Chris regarding their interests in the Trust, consider their interests or needs, or make any distributions directly to either of them.

57.     Rather, during its twenty-two-year administration of the Trust, BNH failed to consider Ben's and Chris' interests in its administration of the Trust and, rather, administered the Trust solely considering Perkins' interests.

58.     At no point during its administration of the trust's investments did Mariner engage with Ben or Chris regarding their interests or needs, or consider their interests or needs in determining how to invest the trust assets.

59.     Rather, during its administration of the trust's investments, Mariner administered the Trust solely considering Perkins's interests.

## COUNT I
### (BREACH OF FIDUCIARY DUTIES OF TRUSTEE)
### (AGAINST BNH)

60.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, as if specifically set forth herein.

61.     In its role as Corporate Trustee of the Trust, BNH failed to recognize Ben as a beneficiary of the Trust, failed to consider his Trust interest in its administration, and, rather, imprudently maintained Trust assets in an income-focused investment portfolio and distributed such income and other substantial amounts of Trust assets to Perkins to the exclusion of other Trust beneficiaries, including Ben.

62.     BNH cannot have properly exercised its discretion regarding distributions when it never identified Ben as a beneficiary at all.

9

63.     By its conduct, BNH breached its fiduciary duty to administer and manage the Trust and distribute Trust property in good faith, in accordance with its terms and purposes and best interests of all beneficiaries, and in accordance with applicable law.  *See* RSA 564-B:8-801; Fla. Stat. Ann. § 736.0801.[3]

64.     By its conduct, BNH breached its duty of loyalty to administer the Trust solely in the interests of the beneficiaries of said trust.  *See* RSA 564-B:8-802; Fla. Stat. Ann. § 736.0802(1).

65.     By its conduct, BNH breached its duty to act impartially. *See* RSA 564-B:8-803; Fla. Stat. Ann. § 736.0803.

66.     By its conduct, BNH breached its duty to administer and manage the Trust and distribute Trust property as a prudent person would, and failed to exercise reasonable care, skill, and caution in its administration. *See* RSA 564-B:8-804; Fla. Stat. Ann. § 736.0804.

67.     By its conduct, BNH breached its duty to comply with the prudent investor rule. *See* RSA 564-B:9-901–907; Fla. Stat. Ann. §§ 518.11, 736.0901.

68.     By its conduct, BNH breached its duty to use its special skills or expertise in its administration of the Trust. *See* RSA 564-B:8-806; Fla. Stat. Ann. § 736.0806.

69.     By its conduct, BNH breached its duty to take reasonable steps to take control of and protect trust property. *See* RSA 564-B:8-809; Fla. Stat. Ann. § 736.0809.

---

[3] New Hampshire law applies to administrative matters because New Hampshire is the principal place of administration of the Trust.  *See* RSA 564-B:1-102(d).  Florida law applies to the interpretation of the Trust's terms because the testamentary Trust does not contain a choice of law provision and Mae Foss resided in Florida at the time of her death.  *See* Fla. Stat. Ann. § 736.0107 (2) ("The meaning and effect of the terms of a trust are determined by: . . . (2) In the absence of a controlling designation in the terms of the trust, the law of the jurisdiction where the settlor resides at the time the trust is first created."); *see also In re Estate of Dow*, 174 N.H. 37, 44-45 (2021); *In re Lyke's Estate*, 113 N.H. 282, 285 (1973).  That said, both New Hampshire and Florida have enacted a version of the Uniform Trust Code and the law is similar in both states.  Accordingly, this complaint contains parallel cites to New Hampshire and Florida law throughout.

70.     By its conduct, BNH breached its duty to keep Ben, a beneficiary, reasonably informed about the administration of the Trust and of the material facts necessary for him to protect his interests, or to provide the annual detailed reports required by applicable law. *See* RSA 564-B:8-813; Fla. Stat. Ann. § 736.0813.

71.     As a beneficiary of the Trust, Ben has suffered damages because of BNH's numerous breaches of its fiduciary duties as Corporate Trustee and is entitled to damages, disgorgement of BNH's fees, and other relief.  *See* RSA 564-B:10-1001–1002; Fla. Stat. Ann. §§ 736.1001–736.1002.

## COUNT II
### (BREACH OF FIDUCIARY DUTIES OF CO-TRUSTEE)
### (AGAINST BNH)

72.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 71, as if specifically set forth herein.

73.     To the extent that BNH asserts that any of the alleged breaches of trust outlined in Count I are the fault of Perkins, BNH had a duty to exercise reasonable care to prevent Perkins from committing such breaches of trust and to compel Perkins to redress breaches of trust.  *See* RSA 564-B:7-703(g); Fla. Stat. Ann. § 736.0703(7).

74.     At no point did BNH take any steps to prevent Perkins from committing breaches of trust or compel Perkins to redress breaches of trust.

75.     By its conduct, BNH breached its duty as co-Trustee of the Trust to exercise reasonable care to prevent Perkins from committing breaches of trust or to compel Perkins to redress his breaches of trust.

76.     As a beneficiary of the Trust, Ben has suffered damages because of BNH's breach of fiduciary duty and is entitled to damages, disgorgement of BNH's fees, and other relief.  *See* RSA 564-B:10-1001–1002; Fla. Stat. Ann. §§ 736.1001–736.1002.

**COUNT III**
**(TRUSTEE REMOVAL)**
**(AGAINST BNH)**

77.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 76, as if specifically set forth herein.

78.     A beneficiary may request the court to remove a trustee.  *See* RSA 564-B:7-706(a); Fla. Stat. Ann. § 736.0706(1).

79.     The court may remove a Trustee if the Trustee has committed a serious breach of trust, if a lack of cooperation among co-Trustees substantially impairs the administration of the Trust, or if removal is in the best interest of the beneficiaries because of unfitness, unwillingness, or persistent failure of the Trustee to administer the Trust effectively.  *See* RSA 564-B:7-706(b); Fla. Stat. Ann. § 736.0706(2).

80.     In light of BNH's conduct and serious breaches of trust as outlined in Counts I and II, Ben demands removal of BNH as the Corporate Trustee, and such removal is warranted. *See* RSA 564-B:7-706(b); Fla. Stat. Ann. § 736.0706(2).

**COUNT IV**
**(BREACH OF FIDUCIARY DUTIES OF TRUSTEE)**
**(AGAINST PERKINS)**

81.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 80, as if specifically set forth herein.

12

82.    In his role as co-Trustee of the Trust, Perkins failed to consider Ben's Trust interest in the Trust's administration, and facilitated BNH's distribution of substantial amounts of Trust assets to himself to the exclusion of other Trust beneficiaries, including Ben.

83.    By his conduct, Perkins breached his fiduciary duty to administer and manage the Trust and distribute Trust property in good faith, in accordance with its terms and purposes and best interests of all beneficiaries, and in accordance with applicable law.  *See* RSA 564-B:8-801; Fla. Stat. Ann. § 736.0801.

84.    By his conduct, Perkins breached his duty of loyalty to administer the Trust solely in the interests of the beneficiaries of said trust.  *See* RSA 564-B:8-802; Fla. Stat. Ann. § 736.0802(1).

85.    By his conduct, Perkins breached his duty to act impartially.  *See* RSA 564-B:8-803; Fla. Stat. Ann. § 736.0803.

86.    By his conduct, Perkins breached his duty to administer and manage the Trust and distribute Trust property as a prudent person would, and failed to exercise reasonable care, skill, and caution in its administration.  *See* RSA 564-B:8-804; Fla. Stat. Ann. § 736.0804.

87.    By his conduct, Perkins breached his duty to take reasonable steps to take control of and protect trust property.  *See* RSA 564-B:8-809; Fla. Stat. Ann. § 736.0809.

88.    By his conduct, Perkins breached his duty to keep Ben, a beneficiary, reasonably informed about the administration of the Trust and of the material facts necessary for him to protect his interests, or to provide the annual detailed reports required by applicable law.  *See* RSA 564-B:8-813; Fla. Stat. Ann. § 736.0813.

13

89. As a beneficiary of the Trust, Ben has suffered damages because of Perkins' numerous breaches of his fiduciary duties as co-Trustee and is entitled to damages and other relief. *See* RSA 564-B:10-1001–1002; Fla. Stat. Ann. §§ 736.1001–736.1002.

## COUNT V
## (BREACH OF FIDUCIARY DUTIES AS CO-TRUSTEE)
## (AGAINST PERKINS)

90. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 89, as if specifically set forth herein.

91. To the extent that Perkins asserts that any of the alleged breaches of trust outlined in Count IV are the fault of BNH, Perkins had a duty to exercise reasonable care to prevent BNH from committing such breaches of Trust. *See* RSA 564-B:7-703(g); Fla. Stat. Ann. § 736.0703(7).

92. At no point did Perkins take any steps to prevent BNH from committing breaches of trust or compel BNH to redress its breaches of trust.

93. By his conduct, Perkins breached his duty as co-Trustee of the Trust to exercise reasonable care to prevent BNH from committing breaches of trust and to compel BNH to redress its breaches of trust.

94. As beneficiary of the Trust, Ben has suffered damages because of Perkins's breach of fiduciary duty and is entitled to damages and other relief. *See* RSA 564-B:10-1001–1002; Fla. Stat. Ann. §§ 736.1001–736.1002.

## COUNT VI
## (TRUSTEE REMOVAL)
## (AGAINST PERKINS)

95. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 94, as if specifically set forth herein.

14

96.     A beneficiary may request the court to remove a trustee.  *See* RSA 564-B:7-706(a); Fla. Stat. Ann. § 736.0706(1).

97.     The court may remove a Trustee if the Trustee has committed a serious breach of trust, if a lack of cooperation among co-Trustees substantially impairs the administration of the Trust, or if removal is in the best interest of the beneficiaries because of unfitness, unwillingness, or persistent failure of the Trustee to administer the Trust effectively.  *See* RSA 564-B:7-706(b); Fla. Stat. Ann. § 736.0706(2).

98.     In light of Perkins's conduct and serious breaches of trust as outlined in Counts IV and V, Ben demands removal of Perkins as co-Trustee, and such removal is warranted.  *See* RSA 564-B:7-706(b); Fla. Stat. Ann. § 736.0706(2).

**COUNT VII**
**(APPOINTMENT OF ALTERNATE TRUSTEE)**
**(AGAINST BNH AND PERKINS)**

99.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 98, as if specifically set forth herein.

100.    Considering the numerous breaches of trust committed by the co-Trustees, Plaintiff demands appointment of a competent, professional trustee to serve as Corporate Trustee.  *See* RSA 564-B:7-704(b), (e); RSA 564-B:10-1001; Fla. Stat. Ann. §§ 736.0704(2), 736.0704(5), 736.1001(2)(e), (j).

**COUNT VIII**
**(ACTION FOR ACCOUNTING)**
**(AGAINST BNH AND PERKINS)**

101.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 100, as if specifically set forth herein.

102. The Trust account statements provided by BNH to Ben since November 25, 2025 are insufficient for him to understand the Trust's full administration and protect his beneficiary interest in the Trust.

103. Further, the co-Trustees have committed numerous breaches of Trust as outlined in Counts I, II, IV, and V above.

104. Accordingly, Ben demands a full accounting of the Trust. *See* RSA 564-B:10-1001(b)(4); RSA 564-B:8-813; Fla. Stat. Ann. §§ 736.0813, 736.08135, 736.1001.

## COUNT IX
### (BREACH OF FIDUCIARY DUTIES AS INVESTMENT MANAGER)
### (AGAINST MARINER)

105. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 104, as if specifically set forth herein.

106. A Trustee may delegate investment duties and functions. RSA 564-B:8-807; Fla. Stat. Ann. § 736.0807(1).

107. In performing a delegated function, an agent owes a duty to the trust to exercise reasonable care. RSA 564-B:8-807(c); Fla. Stat. Ann. § 736.0807(b)(2).

108. To the extent of its delegated function, in its role as investment manager for the Trust, Mariner failed to consider the interests of Ben as beneficiary of the Trust, and imprudently maintained Trust assets in an income-focused investment portfolio for the benefit of Perkins.

109. By its conduct, Mariner breached its duty to comply with the prudent investor rule. *See* RSA 564-B:9-901–907; Fla. Stat. Ann. §§ 518.11, 736.0901.

110. As a beneficiary of the Trust, Ben has suffered damages because of Mariner's breaches of fiduciary duties as investment manager, and is entitled to damages, disgorgement of

Mariner's fees, and other relief. *See* RSA 564-B:10-1001–1002; Fla. Stat. Ann. §§ 736.1001–736.1002.

## COUNT X
### (REQUEST FOR AWARD OF ATTORNEYS FEES AND COSTS)
### (AGAINST ALL DEFENDANTS)

111.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 110, as if specifically set forth herein.

112.    Ben has had to incur and is incurring attorneys fees and costs in an effort to hold BNH, Perkins, and Mariner accountable for their breaches of trust, for the benefit of the beneficiaries of the Trust.

113.    Ben requests this Court order his costs and expenses, including reasonable attorneys fees, be paid by BNH, Perkins, and/or Mariner, or in the alternative, from the Trust. *See* RSA 564-B:10-1004; Fla. Stat. Ann. § 736.1004.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Benjamin Foss respectfully requests that this Court:

A.    Issue a judgment awarding Ben damages caused by the co-Trustees' numerous breaches of trust and of their fiduciary duties;

B.    Issue a judgment awarding Ben damages caused by Mariner's breaches of the prudent investor rule and other fiduciary duties;

C.    Issue a judgment removing BNH as Corporate Trustee of the Trust;

D.    Issue a judgment removing Perkins as co-Trustee of the Trust;

E.    Issue a judgment appointing a competent, professional and disinterested Corporate Trustee to administer the Trust;

17

F.      Issue an order requiring BNH to render a full and complete accounting of the Trust from the funding of the Trust to the present;

G.      Issue a judgment requiring BNH to disgorge all fees received during its administration;

H.      Issue a judgment awarding attorneys fees and costs to Plaintiff; and

I.      Grant such other and further relief as the Court shall determine just and proper.

Respectfully Submitted,

BENJAMIN FOSS

By his Attorneys,

SHAHEEN & GORDON, PA

Dated: June 12, 2026

/s/ Benjamin T. Siracusa Hillman
Benjamin T. Siracusa Hillman (NH Bar # 20967)
SHAHEEN & GORDON, PA
107 Storrs Street
Concord, NH 03301
Tel (603) 225-7262
Email bsiracusahillman@shaheengordon.com